**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
**AT SEATTLE**

DEBORAH ANN STONE,

                 Plaintiff,

    v.

MICHAEL J. ASTRUE, Commissioner of
Social Security,

                 Defendant.

NO.  C10-713-RSL-JPD

REPORT AND
RECOMMENDATION

       Plaintiff Deborah Ann Stone appeals the final decision of the Commissioner of the
Social Security Administration ("Commissioner") which denied her applications for
Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C.
§§ 1381-83f, after a hearing before an administrative law judge ("ALJ").  For the reasons set
forth below, the Court recommends that the Commissioner's decision be REVERSED and
REMANDED.

              I.       FACTS AND PROCEDURAL HISTORY

       At the time of the administrative hearing, plaintiff was a thirty-seven-year-old woman.
Administrative Record ("AR") at 688.  She graduated from high school, and has completed
some college business school courses.  AR at 689.  Plaintiff was last gainfully employed from
1997-1998 as a photographer for Sears.  AR at 61, 103, 710.

Plaintiff asserts that she is disabled due to HIV infection, back pain, migraines, depression, and anxiety.  AR at 56.  In addition to these alleged impairments, plaintiff testified regarding intermittent seizure-like episodes, hand and leg numbness, hand and leg pain with tremors, and side effects from medication such as chronic diarrhea and fatigue.  AR at 67-74; 688-714.  Plaintiff's alleged onset date is October 1, 2003.  AR at 62-65.

The Commissioner denied plaintiff's claim initially and on reconsideration.  AR at 51, 56.  Plaintiff requested a hearing, which took place on December 13, 2007.  AR at 688.  On February 7, 2008, the ALJ issued a decision finding plaintiff not disabled and denied benefits based on his finding that plaintiff could perform a specific job existing in significant numbers in the national economy.  AR at 26-27.

After reviewing additional evidence, the Appeals Council denied plaintiff's request for review, making the ALJ's ruling the "final decision" of the Commissioner as that term is defined by 42 U.S.C. § 405(g).  AR at 5-8.  On May 3, 2010, plaintiff timely filed the present action challenging the Commissioner's decision.  Dkt. 3.

## II.     JURISDICTION

Jurisdiction to review the Commissioner's decision exists pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

## III.     STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole.  *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005).  "Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *Richardson v. Perales*, 402 U.S. 389, 201 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989).  The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist.  *Andrews v. Shalala*,

53 F.3d 1035, 1039 (9th Cir. 1995).  While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner.  *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).  When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld.  *Id.*

The Court may direct an award of benefits where "the record has been fully developed and further administrative proceedings would serve no useful purpose." *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002) (citing *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996)).  The Court may find that this occurs when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting the claimant's evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled if he considered the claimant's evidence.

*Id.* at 1076-77; *see also Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000) (noting that erroneously rejected evidence may be credited when all three elements are met).

## IV.    EVALUATING DISABILITY

As the claimant, Ms. Stone bears the burden of proving that she is disabled within the meaning of the Social Security Act (the "Act").  *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (internal citations omitted).  The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment which has lasted, or is expected to last, for a continuous period of not less than twelve months.  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  A claimant is disabled under the Act only if her impairments are of such severity that she is unable to do her previous work, and cannot, considering her age, education, and work experience, engage in any other substantial gainful activity existing in the national economy.  42 U.S.C. §§ 423(d)(2)(A); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

The Commissioner has established a five step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Act. *See* 20 C.F.R. §§ 404.1520, 416.920. The claimant bears the burden of proof during steps one through four. At step five, the burden shifts to the Commissioner. *Id.* If a claimant is found to be disabled at any step in the sequence, the inquiry ends without the need to consider subsequent steps. Step one asks whether the claimant is presently engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(b), 416.920(b).[1] If she is, disability benefits are denied. If she is not, the Commissioner proceeds to step two. At step two, the claimant must establish that she has one or more medically severe impairments, or combination of impairments, that limit her physical or mental ability to do basic work activities. If the claimant does not have such impairments, she is not disabled. 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant does have a severe impairment, the Commissioner moves to step three to determine whether the impairment meets or equals any of the listed impairments described in the regulations. 20 C.F.R. §§ 404.1520(d), 416.920(d). A claimant whose impairment meets or equals one of the listings for the required twelve-month duration requirement is disabled. *Id.*

When the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, the Commissioner must proceed to step four and evaluate the claimant's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(e), 416.920(e). Here, the Commissioner evaluates the physical and mental demands of the claimant's past relevant work to determine whether she can still perform that work. 20 C.F.R. §§ 404.1520(f), 416.920(f). If the claimant is able to perform her past relevant work, she is not disabled; if the opposite is true, then the burden shifts to the Commissioner at step five to show that the claimant can perform other work that exists in significant numbers in the national economy, taking into consideration the claimant's RFC, age, education, and work experience. 20 C.F.R. §§

---

[1] Substantial gainful activity is work activity that is both substantial, i.e., involves significant physical and/or mental activities, and gainful, i.e., performed for profit. 20 C.F.R. § 404.1572.

REPORT AND RECOMMENDATION - 4

404.1520(g), 416.920(g); *Tackett*, 180 F.3d at 1099, 1100.  If the Commissioner finds the claimant is unable to perform other work, then the claimant is found disabled and benefits may be awarded.

V.      DECISION BELOW

On February 7, 2008, the ALJ issued a decision finding the following:

1.  The claimant has not engaged in substantial gainful activity since March 15, 2005, the application date.

2.  The claimant has the following severe impairments: HIV infection with medication side effects.

3.  The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

4.  After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform the full range of light work.

5.  The claimant is unable to perform any past relevant work.

6.  The claimant was born on XXXXX, 1970[2] and was 34 years old, which is defined as a younger individual age 18-49, on the date the application was filed.

7.  The claimant has at least a high school education and is able to communicate in English.

8.  Transferability of job skills is not material to the determination of disability because applying the Medical-Vocational Rules directly supports a finding of "not disabled," whether or not the claimant has transferable job skills.

9.  Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

10. The claimant has not been under a disability, as defined in the Social Security Act, since March 15, 2005, the date the application was filed.

---

[2] The actual date is deleted in accordance with Local Rule CR 5.2, W.D. Washington.

REPORT AND RECOMMENDATION - 5

AR at 18-27.

## VI.     ISSUES ON APPEAL

The principal issues on appeal are:

1.     Whether the ALJ erred in evaluating the severity of plaintiff's mental impairments and migraines at step two?

2.     Whether the ALJ erred in evaluating the medical opinions of examining psychologist, Dr. Lind?

3.     Whether the ALJ erred in evaluating the medical opinions of the State Agency Medical Consultants?

4.     Whether the ALJ erred in assessing plaintiff's residual functional capacity (RFC) at step four?

5.     Whether the ALJ erred in evaluating plaintiff's credibility?

6.     Whether the ALJ erred in evaluating the lay witness testimony of plaintiff's boyfriend, Joseph Cameron, and daughter, Michaela Stone?

7.     Whether the ALJ erred at step five by failing to elicit vocational expert testimony to determine whether any jobs existed in significant numbers in the national economy that plaintiff could perform?

*See* Dkt. 13 at 3-4; Dkt. 15 at 1-2.

## VII.     DISCUSSION

A.     <u>The ALJ Erred In Evaluating Plaintiff's "Severe" Impairments At Step Two</u>

Plaintiff contends that the ALJ erred in determining plaintiff's "severe" impairments at step two "because he only considered Plaintiff's anxiety when assessing her limitations in the four essential areas of functioning, and he failed to consider plaintiff's depressive disorder" either singly, or in combination with her anxiety.  Dkt. 13 at 6-10; Dkt. 16 at 5.  In addition, plaintiff asserts that "the ALJ did not provide any reasons at step 2 for disregarding Plaintiff's migraine headaches" as a severe physical impairment.  Dkt. 13 at 15; *see* Dkt. 16 at 4.

The Commissioner acknowledges that plaintiff's treating physician, Scott Blaker, M.D., diagnosed plaintiff with depression, but argues that "the evidence that was available supported

the ALJ's finding that none of Plaintiff's alleged mental impairments imposed more than minimal limitations during the relevant period." Dkt. 15 at 5. With respect to plaintiff's migraines, the Commissioner denies any error by the ALJ because "[t]he ALJ noted that Plaintiff reported experiencing migraine headaches." Dkt. 15 at 6.

Step two of the sequential evaluation process requires a claimant to prove that he has a severe impairment or combination of impairments. 20 C.F.R. § 404.1520(c), 416.920(c). An impairment is severe if it significantly limits the plaintiff's ability to perform basic work activities.[3] 20 C.F.R. § 404.1521(a), 416.921(a). When an impairment or combination of impairments consist of no more than a slight abnormality that have only a minimal effect on an individual's ability to work, a finding of non-severe is appropriate. *Smolen*, 80 F.3d at 1290 (internal citations omitted); *see also* SSR 96-3p, at *1. Hence, step two acts as a "*de minimis* screening device to dispose of groundless claims." *Id.* Plaintiff has the burden of proving that his "impairments or their symptoms affect [his] ability to perform basic work activities." *Edlund v. Massanari,* 253 F.3d 1152, 1159-60 (9th Cir. 2001); *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1998).

In addition to the five-step analysis outlined in 20 C.F.R. § 404.1520, the Commissioner has promulgated additional regulations governing evaluations of the severity of mental impairments. 20 C.F.R. § 404.1520a. When a claimant alleges that he or she has a severe mental impairment, these regulations require application of a "special technique" at the second and third steps of the five-step framework, *Schmidt v. Astrue*, 496 F.3d 833, 844 n. 4 (7th Cir. 2007), and at each level of administrative review. 20 C.F.R. § 404.1520a(a). "Under the special technique, [the ALJ] must first evaluate [the claimant's] pertinent symptoms, signs, and laboratory findings to determine whether [she has] a medically determinable mental

---

[3] Basic work activities include the abilities and aptitudes necessary to do most jobs including walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, handling, seeing, hearing, understanding, carrying out and remembering simple instructions, and dealing with changes in a routine work setting. *See* 20 C.F.R. §§ 404.1521(b), 416.921(b).

impairment(s)." *Id.* § 404.1520a(b)(1).  If the claimant is found to have such an impairment, the reviewing authority must "rate the degree of functional limitation resulting from the impairment(s) in accordance with paragraph (c)," § 404.1520a(b)(2), which specifies four broad functional areas: (1) activities of daily living; (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of decompensation. *Id*. § 404.1520a(c)(3).  According to the regulations, if the degree of limitation in each of the first three areas is rated "none or mild," and no episodes of decompensation are identified in the fourth area, then the reviewing authority generally will conclude that the claimant's mental impairment is not "severe."  20 C.F.R. § 404.1520a(d)(1).

### 1. *Depressive Disorder*

The ALJ found that plaintiff's only severe impairments were "HIV infection with medication side effects."  AR at 18.  With respect to plaintiff's alleged mental impairments, the ALJ asserted that "[t]he claimant's medically determinable mental impairments of anxiety disorder, considered singly and in combination, do not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and are therefore nonsevere.  In making this finding, I have considered the four broad functional areas set out in the disability regulations for evaluating mental disorders[.]"  AR at 22.  The ALJ concluded that "[b]ecause the claimant's medically determinable mental impairments cause no more than 'mild' limitation in any of the first three functional areas and 'no' limitation in the fourth area, they are nonsevere."  AR at 22.  In other words, the ALJ found that plaintiff's anxiety disorder has only a minimal effect on her ability to do basic work activities.  20 C.F.R. § 404.1520a(d)(1).  The ALJ did not consider plaintiff's diagnosed depressive disorder as part of this analysis, although plaintiff also alleged that her depression constituted a severe mental impairment.  AR at 22-23, 56.

The Ninth Circuit has held that an ALJ's failure to follow the 20 C.F.R. § 404.1520a technique requires reversal if the claimant has a "colorable claim of a mental impairment."

*Selassie v. Barnhart*, 203 Fed.Appx. 174, 176 (9th Cir. 2006) (reaffirming its holding in *Gutierrez* as it applies to the current version of 20 C.F.R. § 404.1520a and 416.920a, and holding that "[t]he specific documentation requirements . . . are not mere technicalities that can be ignored as long as the ALJ reaches the same result that it would have if it had followed those requirements."). For example, in *Selassie*, the Ninth Circuit reversed where "neither the ALJ nor the Appeals Council engaged in any of the required analysis with regard to [the claimant]'s diagnosed post traumatic stress disorder ("PTSD")." *Id*. at 176.

In this case, plaintiff has a "colorable claim" that she suffers from depression. As the Commissioner concedes, plaintiff was diagnosed with depression by her physicians and mental health counselors as early as 2004. AR at 303-21, 431-35, 438, 451, 472, 478. In March 2004, plaintiff was receiving counseling from Lisa Harmon, MS, MHC, and Douglas Benjamin, MS, LMHC, for a generalized anxiety disorder and depression. AR at 303-21. In addition, Dr. Ellen Walker Lind, Ph.D., who conducted a DSHS psychological exam of plaintiff in June 2005, reported that plaintiff's memory difficulties "may be the result of depression and anxiety" and "strongly encouraged [plaintiff] to continue meeting with her psychotherapist on treatment of symptoms of anxiety and depression." AR at 139. By September 2004, chart notes indicate that plaintiff was taking an increased dose of Zoloft. AR at 277. Similarly, the three Disability Determination Services ("DDS") state agency medical consultants who reviewed plaintiff's case in August 2005 and January 2006 determined that plaintiff suffered from a depressive disorder that should be considered "severe" under the Act. AR at 105, 108, 367-68. In April 2007, plaintiff's treating physician, Scott Blaker, M.D., noted plaintiff's "history of depression" and prescribed Cymbalta. AR at 478. After plaintiff reported that she did not notice any effect, Dr. Blaker increased the dosage in May 2007.[4] AR at 478, 472.

---

[4] Although the ALJ did not acknowledge plaintiff's allegations that she suffers from depression at any point in his decision, he did acknowledge that plaintiff was taking an antidepressant in May 2007. Specifically, in dismissing plaintiff's gastrointestinal complaints relating to her medication, the ALJ observed that "[i]n May of 2007 the claimant reported that she was spending a lot of time with her boyfriend at the bar, but she was not noting any effect

1  Plaintiff stopped taking Cymbalta in November 2007, but was advised that she could resume

2  her treatment or try a different antidepressant medication at any time.  AR at 431.  Since

3  November 2007, plaintiff appears to have continued receiving mental health treatment for

4  "depression and anxiety" from Dr. Harmon.  AR at 451.

5          Thus, the ALJ was obligated under the regulations to consider plaintiff's depressive

6  disorder in making the requisite findings as to plaintiff's degree of limitation in each of the

7  four functional areas, 20 C.F.R. § 404.1520a(c)(3), as well as "document application of the

8  technique in the decision."  *Id*. § 404.1520a(e).  As the ALJ did not address plaintiff's

9  depressive disorder in his decision, the Court has no basis to evaluate whether the ALJ

10  properly excluded plaintiff's depression as a severe impairment.  As a result, this case must be

11  remanded so that the ALJ can consider whether plaintiff's depressive disorder, either singly or

12  in combination with plaintiff's anxiety disorder, constitutes a severe mental impairment.  On

13  remand, the ALJ should document his application of the "special technique" for evaluating the

14  severity of mental impairments, as required by 20 C.F.R. § 404.1520a.

15               2.  *Migraines*

16          The ALJ also failed to make specific findings at step two regarding the severity of

17  plaintiff's migraine headaches.  AR at 18.  In fact, the ALJ's decision fails to mention the

18  medical evidence or substantial testimony in the record concerning plaintiff's migraines,

19  except to point out that "doctors for the State Agency . . . noted that the claimant's migraines

20  had been rare and treated with Percocet," AR at 19, and to reject plaintiff's boyfriend's lay

21  witness testimony because "he attributes many of claimant's limitations to migraines, while the

22  claimant takes no prophylactic migraine medication."  AR at 26.  Thus, plaintiff correctly

23  argues that the ALJ also erred by failing to discuss the severity of plaintiff's migraines.

24

25

26  from her antidepressant.  Her doctor has told her that if she cuts down on her alcohol she might
   improve the impact of her medication."  AR at 25.

REPORT AND RECOMMENDATION - 10

The Ninth Circuit has held that an ALJ cannot simply ignore substantial evidence of an alleged impairment in considering the combined effect of a claimant's impairments at step two. *See Smolen*, 80 F.3d at 1290 (proving that an ALJ erred at step two by finding that a claimant "suffer[ed] from only one severe impairment . . . [where] in so finding, the ALJ ignored substantial and undisputed evidence of [the claimant]'s other impairments and failed to consider how the combination of those impairments affected [the claimant]'s ability to do basic work activities."). In this case, medical records from at least September 2004 indicate that plaintiff has a "long history" of migraine headaches, and has been prescribed Percocet because she obtains no relief from "Imitrex or Maxalt." AR at 276. For example, a December 2004 chart note from the Interfaith Clinic indicated that plaintiff has a history of migraines since age 15 with increasing frequency and intensity, and even Percocet is not always effective in relieving the pain. AR at 266. The records also reflect that plaintiff was prescribed Percocet again in May 2005 and 2007 to treat her migraines. AR at 216, 450. In light of the ALJ's failure to evaluate the medical evidence of plaintiff's migraines, the Court has no basis to evaluate whether the ALJ properly excluded the migraines as a severe physical impairment.

On remand, the ALJ should also consider whether plaintiff's migraines, either singly or in combination with plaintiff's other impairments, constitute a severe physical impairment. Here, the ALJ did not expressly take plaintiff's depressive disorder or migraines into account in calculating plaintiff's RFC at step four. AR at 24. *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007) (ALJ's failure to list bursitis as severe at step two was harmless error where ALJ considered functional limitations of bursitis at step four); *Burch*, 400 F.3d at 682, 684 (ALJ did not commit reversible error in not considering the claimant's obesity at step two because the ALJ adequately considered the claimant's obesity in his RFC determination). Accordingly, if the ALJ determines on remand that plaintiff's depressive disorder or migraines constitute severe impairments, the ALJ should articulate how, if it all, these impairments affect the ALJ's RFC determination.

1        B.      <u>On Remand, The ALJ Must Reevaluate The Pertinent Medical Evidence</u>

2              1.  *Standard of Review for Medical Evidence*

3        As a matter of law, more weight is given to a treating physician's opinion than to that

4  of a non-treating physician because a treating physician "is employed to cure and has a greater

5  opportunity to know and observe the patient as an individual." *Magallanes*, 881 F.2d at 751;

6  *see also Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). A treating physician's opinion,

7  however, is not necessarily conclusive as to either a physical condition or the ultimate issue of

8  disability, and can be rejected, whether or not that opinion is contradicted. *Magallanes*, 881

9  F.2d at 751. If an ALJ rejects the opinion of a treating or examining physician, the ALJ must

10  give clear and convincing reasons for doing so if the opinion is not contradicted by other

11  evidence, and specific and legitimate reasons if it is. *Reddick v. Chater*, 157 F.3d 715, 725

12  (9th Cir. 1988). "This can be done by setting out a detailed and thorough summary of the facts

13  and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id.*

14  (citing *Magallanes*, 881 F.2d at 751). The ALJ must do more than merely state his

15  conclusions. "He must set forth his own interpretations and explain why they, rather than the

16  doctors', are correct." *Id.* (citing *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)).

17  Such conclusions must at all times be supported by substantial evidence. *Reddick*, 157 F.3d at

18  725.

19        The opinions of examining physicians are to be given more weight than non-examining

20  physicians. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). Like treating physicians, the

21  uncontradicted opinions of examining physicians may not be rejected without clear and

22  convincing evidence. *Id.* An ALJ may reject the controverted opinions of an examining

23  physician only by providing specific and legitimate reasons that are supported by the record.

24  *Bayliss*, 427 F.3d at 1216.

25        Opinions from non-examining medical sources are to be given less weight than treating

26  or examining doctors. *Lester*, 81 F.3d at 831. However, an ALJ must always evaluate the

REPORT AND RECOMMENDATION - 12

opinions from such sources and may not simply ignore them.  In other words, an ALJ must evaluate the opinion of a non-examining source and explain the weight given to it.  SSR 96-6p, 1996 WL 374180, at *2.  Although an ALJ generally gives more weight to an examining doctor's opinion than to a non-examining doctor's opinion, a non-examining doctor's opinion may nonetheless constitute substantial evidence if it is consistent with other independent evidence in the record.  *Thomas*, 278 F.3d at 957; *Orn*, 495 F.3d at 632-33.

### 2. *The ALJ's Treatment of the Opinions of Ellen Walker Lind, Ph. D.*

Plaintiff contends that the ALJ erred by affording "no weight" to the medical opinions of examining psychologist Dr. Lind, who conducted a psychological evaluation of plaintiff on June 2, 2005.  AR at 131-39.  Dr. Lind reported that she had reviewed "a Function Report - Adult completed by Wendy Weitz, Case Manager," as well as "[c]hart notes dictated in 2004 by Lisa Harmon, M.S.," to obtain background information for her evaluation.  AR at 136.  In addition, "Ms. Stone was interviewed for information about her history and functioning."  AR at 136.

Dr. Lind diagnosed plaintiff with dysthymic disorder, panic disorder without agoraphobia, generalized anxiety disorder, and polysubstance dependence in sustained full remission.  AR at 139.  Specifically, she found that plaintiff's "remote memory is reportedly good, but recent memory is poor.  She explained that she forgets appointments and things that her parents tell her."  AR at 138.  On the Wechsler Memory Scale (WMS-III), plaintiff's "memory skills are all average or above, with the exception of Working Memory, measuring short-term immediate recall."  AR at 138.  In addition, "[r]esults of the Trail-Making Test indicate that Ms. Stone functioned better than about 80 percent of others her age on Trails A and better than 90 percent of others her age on Trails B, with one error on Trails B."  AR at 139.  Based upon the testing administered to plaintiff, Dr. Lind stated that plaintiff's "memory difficulties are not evident through current testing and may be a result of depression and anxiety.  She is strongly encouraged to continue meeting with her psychotherapist on treatment

REPORT AND RECOMMENDATION - 13

of symptoms of anxiety and depression." AR at 129.  With respect to plaintiff's physical

symptoms, Dr. Lind reported that the "[p]rognosis for improvement of Ms. Stone's symptoms

is guarded based on severity of physical concerns.  She reported having headaches which

impact her several days a week and ongoing physical pain." AR at 139.  Finally, Dr. Lind

assessed plaintiff with a Global Assessment of Functioning ("GAF") score of 41, which

indicates serious impairments.[5]  AR at 139.

The ALJ accorded "no weight" to Dr. Lind's findings because "the claimant had told

Dr. Lind that she had stopped using drugs in July of 2002 when she clearly was using

marijuana and alcohol after that." AR at 23.  In addition, the ALJ found that "Dr. Lind stated

that the claimant's prognosis was limited based on her physical concerns," but "[t]his is not an

area of expertise for Dr. Lind and she was clearly accepting the claimant's report of physical

symptoms without reviewing the medical evidence to see if they were supported." AR at 23.

Plaintiff contends that the ALJ erred because "the ALJ failed to give specific and

legitimate reasons, supported by substantial evidence, for rejecting the opinions of this

examining doctor." Dkt. 13 at 13.  Plaintiff asserts that contrary to the ALJ's assertions, "the

psychologist clearly did not base her opinions of Plaintiff's mental impairments and limitations

primarily on Plaintiff's statements, or a misperception of Plaintiff's use of marijuana or

alcohol." *Id*. at 14.  The Commissioner responds that "the ALJ properly considered all of the

medical evidence" in this case. Dkt. 15 at 3.

The Court finds plaintiff's arguments persuasive.  As mentioned above, Dr. Lind stated

at the outset of her evaluation that she had reviewed plaintiff's medical records from therapy,

including Dr. Harmon's chart notes indicating "that in August of 2004 [the plaintiff] used

---

[5]   The GAF score is a subjective determination based on a scale of 1 to 100 of "the clinician's judgment of the individual's overall level of functioning." AMERICAN PSYCHIATRIC ASS'N, DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 32-34 (4th ed. 2000). A GAF score of 41-50 indicates "[s]erious symptoms," such as suicidal ideation or severe obsessional rituals, or "any serious impairment in social, occupational, or school functioning," such as the lack of friends and/or the inability to keep a job. *Id.* at 34.

REPORT AND RECOMMENDATION - 14

marijuana and alcohol daily during a trip to Texas." AR at 136.  Thus, the ALJ's assertion that Dr. Lind mistakenly relied upon the claimant's statement that she stopped using drugs in July 2002 was not supported by the record.  AR at 23.  In addition, because the ALJ failed to discuss the medical evidence of plaintiff's migraines in this case, the Court has no basis to determine whether the ALJ properly considered Dr. Lind's findings regarding plaintiff's headaches before discounting them.  Even if the ALJ's stated reasons for affording no weight to Dr. Lind's findings regarding plaintiff's "physical concerns" or symptoms were specific and legitimate, he failed to provide any reasons for rejecting Dr. Lind's psychological diagnoses and prognosis – a subject within Dr. Lind's area of expertise and the focus of her evaluation. For example, the ALJ failed to acknowledge or discuss Dr. Lind's assessed GAF score of 41, or her diagnosis of dythmic disorder, panic disorder, and generalized anxiety disorder.  On remand, the ALJ is directed to reevaluate Dr. Lind's medical opinion and assessed GAF score, after also taking into consideration the medical evidence concerning plaintiff's depression and migraines.

### 3.   *The ALJ's Treatment of the State Agency Medical Consultants' Opinions*

Plaintiff contends that the ALJ also erred in this case by failing to provide valid reasons for disregarding the opinions of the DDS state agency medical consultants, who considered plaintiff's anxiety and depressive disorders to be "severe" within the meaning of the Act.  Dkt. 13 at 10-13.  The Commissioner responds that the ALJ engaged in "a proper analysis," as he is not bound by the state agency medical consultants' opinions. Dkt. 15 at 6.

ALJs are obligated to consider the opinions of non-examining state agency physicians that relate to the nature and severity of an impairment, or whether a claimant meets or equals a listing.  20 C.F.R.  § 404.1527(f)(2)(ii), 416. 927(f)(2)(ii).  These opinions, however, are entitled to less weight than treating or examining doctors.  *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995) (internal citation omitted).  An ALJ must evaluate the opinion of a non-examining source, and must explain the weight he assigns it.  *See* SSR 96-6p.

In August 2005, Timothy Gregg, Ph.D., reviewed plaintiff's medical records for the Commissioner, and determined that plaintiff has an anxiety related disorder that can be evaluated under listing 12.06 as well as a depressive disorder that can be evaluated under listing 12.04.  AR at 105, 108, 110.  When assessing the impact of claimant's depression and anxiety upon the four essential areas of function, Dr. Gregg found that plaintiff's concentration, persistence, or pace were "moderately limited," which indicates that her mental impairments were "severe" within the meaning of the Act.  AR at 115.  Specifically, he found that due to plaintiff's psychologically based symptoms, plaintiff's ability to complete a normal workday and workweek and to perform at a consistent pace without an unreasonable number and length of rest periods was "moderately limited."  AR at 128.  In his mental residual functional capacity assessment, Dr. Gregg explained that "[t]he claimant's allegations are partially credible in that she has been diagnosed with mental impairment.  However, her functional limitations do not meet listing level criteria."  AR at 129.  In contrast, Dr. Gregg characterized plaintiff's credibility with respect to her alleged physical limitations as "poor," because plaintiff was physically able to travel to Pennsylvania to smoke marijuana with a friend.  AR at 126.  State agency consultants Robert G. Hoskins, MD, and Thomas Clifford both affirmed Dr. Gregg's assessment as written in January 2006.  AR at 367-68.

The ALJ stated that "[t]he State Agency physicians found a severe mental impairment, but in reviewing the limitations they set forth . . . there was no real limitation that would impact the claimant's ability to work."  AR at 23.  For example, although "the claimant is in counseling, the counseling notes indicate that the main problem addressed is typical parenting problems in dealing with her daughter."  AR at 23.  In addition, "the claimant has reported that she had not had a panic attack for years.  There have been times that she did not go to counseling because she was too busy."  AR at 23.  Finally, the ALJ noted that it appears that counseling has helped ensure plaintiff's compliance with treatment, but "she may be more reliable with her medication now that she is living with her boyfriend."  AR at 23.

Here, the ALJ failed to provide specific and legitimate reasons for rejecting the state agency medical consultants' opinions that plaintiff's mental impairments were severe.  AR at 23.  For example, the ALJ did not point to any medical evidence in the record to rebut Dr. Gregg's finding that plaintiff's concentration, persistence, and pace were "moderately limited," or that plaintiff's anxiety and depressive disorders would prevent her from completing a normal work week without an unreasonable number and length of rest periods due to her psychological symptoms.  AR at 115, 128.  *See* 20 C.F.R. § 416.920a(d)(1) (providing that mental impairments can only be found non-severe if they cause no more than "mild" limitation in any of the first three functional areas and there are no incidents of decompensation).  Contrary to the ALJ's assertion, an inability to complete a normal work week without an unreasonable number and length of rest periods "would impact the claimant's ability to work."  AR at 23.  Especially in light of the ALJ's failure, once again, to acknowledge or discuss plaintiff's diagnosed depressive disorder, the ALJ's conclusory assertions are insufficient to rebut the consultants' findings.  Similarly, the ALJ's statements that plaintiff was receiving psychological counseling to address parenting concerns and ensure compliance with treatment ignored the substantial evidence in the record, discussed above, that plaintiff was also receiving counseling to treat her anxiety and depression.  On remand, the ALJ is directed to reevaluate the state agency medical consultants' medical opinions, and expressly take into consideration plaintiff's diagnosis and treatment for her anxiety and depressive disorders.

> ### D.    On Remand, The ALJ Must Reevaluate Plaintiff's RFC

An RFC is the "maximum degree to which [a plaintiff] retains the capacity for sustained performance of the physical-mental requirements of jobs."  20 C.F.R. 404, Subpt. P, App. 2 §200(c).  It is an administrative decision as to the most a plaintiff can do, despite her limitations. SSR 96-8p.  The ALJ must assess all of the relevant evidence, including evidence regarding symptoms that are not severe, to determine if the claimant retains the ability to work

on a "regular and continuing basis," *e.g.*, eight hours a day, five days a week. *Reddick*, 157 F.3d at 724; *Lester v. Chater*, 81 F.3d 821, 833 (9th Cir. 1995); SSR 96-8p.

As discussed above, the ALJ erred at step two in this case by failing to acknowledge or consider plaintiff's alleged depressive disorder and migraines. Similarly, in assessing plaintiff's RFC, the ALJ made no specific finding regarding whether plaintiff's depressive disorder or migraines constituted medically-determinable impairments, or had any effect on plaintiff's ability to work. The ALJ's passing statement that plaintiff "demonstrates no significant treatment for mental impairments" despite the substantial evidence in the record of plaintiff's treatment for both anxiety and depressive disorders, was insufficient to cure this error. AR at 25. *See also Smolen*, 80 F.3d at 1290 (providing that where the ALJ erred in finding that a claimant suffered from only one "severe" impairment at step two, the ALJ also failed to consider at step five how the combination of her other impairments affected her residual functional capacity to perform work.). Upon remand, the ALJ should reevaluate plaintiff's RFC evaluation to reflect any limitations from plaintiff's depressive disorder and migraines.

E.       On Remand, The ALJ Must Reevaluate Plaintiff's Credibility

Plaintiff alleges that the ALJ erred by failing to provide clear and convincing evidence for rejecting her testimony. Specifically, plaintiff contends that the ALJ "failed to properly consider the issue of whether Plaintiff's migraines were severe within the meaning of the Act [at step two,] and when he failed to give proper, supported reasons to reject Plaintiff's testimony about limitations from her migraines." Dkt. 16 at 4.

A determination of whether to accept a claimant's subjective symptom testimony requires a two-step analysis. 20 C.F.R. §§ 404.1529, 416.929; *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996); Social Security Ruling ("SSR") 96-7p. First, the ALJ must determine whether there is a medically determinable impairment that reasonably could be expected to cause the claimant's symptoms. 20 C.F.R. §§ 404.1529(b), 416.929(b); *Smolen*, 80 F.3d at

REPORT AND RECOMMENDATION - 18

1281-82; SSR 96-7p. Once a claimant produces medical evidence of an underlying impairment, the ALJ may not discredit the claimant's testimony as to the severity of symptoms solely because they are unsupported by objective medical evidence. *Bunnell v. Sullivan*, 947 F.2d 341, 343 (9th Cir. 1991) (en banc); *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1988). Absent affirmative evidence showing that the claimant is malingering, the ALJ must provide "clear and convincing" reasons for rejecting the claimant's testimony. *Smolen*, 80 F.3d at 1284; *Reddick*, 157 F.3d at 722.

When evaluating a claimant's credibility, the ALJ must specifically identify what testimony is not credible and what evidence undermines the claimant's complaints; general findings are insufficient. *Smolen*, 80 F.3d at 1284; *Reddick*, 157 F.3d at 722. The ALJ may consider "ordinary techniques of credibility evaluation" including a reputation for truthfulness, inconsistencies in testimony or between testimony and conduct, daily activities, work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains. *Smolen*, 80 F.3d at 1284; *see also Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).

Here, the ALJ found that "the claimant's medically determinable impairment could reasonably be expected to produce some of her alleged symptoms, but . . . the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible. AR at 25. As the plaintiff correctly argues, however, the ALJ did not provide any clear and convincing reasons to disregard plaintiff's testimony regarding the severity of her migraines. As noted above, the ALJ failed to mention plaintiff's migraines in his decision, except to point out at step two that "doctors for the State Agency . . . noted that the claimant's migraines had been rare and treated with Percocet," AR at 19, and to reject plaintiff's boyfriend's testimony on the grounds that "he attributes many of claimant's limitations to migraines, while the claimant takes no prophylactic migraine medication." AR at 26. In light of the substantial evidence in the record that plaintiff has been prescribed

REPORT AND RECOMMENDATION - 19

Percocet because prophylactic migraine medication was ineffective, and even Percocet is frequently ineffective in treating her pain, these are not clear and convincing reasons to disregard plaintiff's testimony.  AR at 19, 126, 136-37.

Because this case is being remanded for reconsideration of the medical evidence, and the Court has found that credibility determinations are inescapably linked to conclusions regarding medical evidence, 20 C.F.R. § 404.1529, the ALJ's credibility finding is also reversed and the issue remanded.  After re-evaluating the medical evidence of record, the ALJ will be in a better position to evaluate the plaintiff's credibility.  On remand, the ALJ should properly assess plaintiff's testimony, and provide clear and convincing reasons for rejecting it should such a conclusion be warranted.

Furthermore, the Court notes that it is evident from the opinion that the ALJ focused on plaintiff's alcohol and marijuana use as a basis for concluding that plaintiff was not entitled to benefits.  For example, the ALJ stated that plaintiff "significantly understated her alcohol use at the hearing, detracting from her credibility and making [the ALJ] suspect that [plaintiff's] marijuana use is also continuing."  AR at 25.  With respect to plaintiff's "chronic problems with gastrointestinal complaints relating to her medication," the ALJ asserted that "the evidence suggests that she drinks up to a six pack of beer a day, and that this may well be a cause of her nausea."  AR at 25.  Moreover, the ALJ noted that "in May of 2007 the claimant reported that she was spending a lot of time with her boyfriend at the bar, but was not noting any effect from her antidepressant.  Her doctor has told her that if she cuts down on her alcohol she might improve the impact of her medication."  AR at 25.  Despite the ALJ's concerns regarding plaintiff's drug and alcohol use, he did not conduct a Drug and Alcohol Analysis ("DAA")[6] relating to the plaintiff.  On remand, if the ALJ believes that a DAA is appropriate, then an analysis should also be included.

_____

[6] Pursuant to the Contract with America Advancement Act, an "individual shall not be considered to be disabled for purposes of [Title II and Title XVI benefits] if alcoholism or drug addiction would (but for this subparagraph) be a contributing factor material to the

1

F.     On Remand, The ALJ Must Reevaluate The Lay Witness Testimony

2        Plaintiff argues that "the ALJ failed to give legitimate, germane reasons to discredit the

3   lay witness testimony" of plaintiff's boyfriend, Joseph Cameron, and sixteen-year-old

4   daughter, Michaela Stone.  Dkt. 16 at 1.  Plaintiff contends that if the lay witness testimony in

5   this case had been properly credited by the ALJ, "it would have constituted additional proof of

6   Plaintiff's limitations from migraines and pain, which would have require a different disability

7   determination by ALJ Dethloff."  Dkt. 13 at 22.  The Commissioner failed to address this claim

8   in his briefing.  *See* Dkt. 15.

9        Lay witness testimony as to a plaintiff's symptoms or how an impairment affects one's

10  ability to work is competent evidence that cannot be disregarded without comment.  20 C.F.R.

11  §§ 404.1513(d)(4), 416.913(d)(4); *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993).  To

12  discount lay witness testimony, the ALJ must "provide reasons germane to each witness."  *Id.*

13       During the administrative hearing, Mr. Cameron and Ms. Stone both testified

14  regarding the nature and extent of plaintiff's impairments.  AR at 715-34.  Although the ALJ

15  considered both witnesses' lay testimony, he did "not find the testimony particularly credible."

16  AR at 26.  With respect to Mr. Cameron's testimony, the ALJ observed that he "apparently

17  both opens and closes the store he works at so he is not home much of the time.  He has only

18  known the claimant for eight months . . . [and] attributes many of the claimant's limitations to

19  migraines, while the claimant takes no prophylactic migraine medication."  AR at 26.  With

20  respect to Ms. Stone's testimony, the ALJ noted that "the claimant's daughter indicates that the

21

---

22  Commissioner's determination that the individual is disabled."  Pub. L. No. 104-121, 110 Stat.
    847 (March 19, 1996) (codified at 42 U.S.C.   423(d)(2)(C), 1382c((a)(3)(J)).  Before applying
23  this statute, however, an ALJ must first conduct the five-step sequential-evaluation process and
    conclude that the claimant is disabled.  *Bustamante v. Massanari*, 262 F.3d 949, 955 (9th Cir.
24  2001).  If a claimant is found to be disabled and there is medical evidence of plaintiff's DAA
    use, then the ALJ must apply the sequential-evaluation process a second time to determine
25  whether plaintiff would still be disabled if he or she stopped using drugs and alcohol.  *Id.*  It is
    error for an ALJ to conclude that DAA precludes an award of benefits prior to applying the
26  five-step process first.  *Id.*

REPORT AND RECOMMENDATION - 21

claimant may scream in pain.  This has not been observed by her counselor or any physician.

She has not observed the claimant with any supposed seizures."  AR at 26.

The ALJ's reasons for rejecting plaintiff's boyfriend's testimony are neither legitimate nor germane.  Contrary to the ALJ's assertion that Mr. Cameron had only known plaintiff for eight months, Mr. Cameron testified that he had "known her for almost three years" and they had been living together for eight months at the time of the administrative hearing.  AR at 715.  Although Mr. Cameron works long hours, he testified extensively regarding his personal observations of plaintiff's symptoms, including how he knew when plaintiff was experiencing a migraine.  AR at 716-17.  Furthermore, the ALJ's rejection of Mr. Cameron's testimony concerning the severity of plaintiff's migraines based upon the lack of corroborating evidence in the medical record was erroneous under the Ninth Circuit's decision in *Bruce v. Astrue*.  557 F.3d 1113, 1116 (providing that an ALJ may not discredit "lay testimony as not supported by medical evidence in the record.").  *See also Smolen*, 80 F.3d 1273, 1289 (9th Cir. 1996) ("The rejection of the testimony of [the claimant's] family members because [the claimant's] medical records did not corroborate her fatigue and pain violates SSR 88-13, which directs the ALJ to consider the testimony of lay witnesses where the claimant's alleged symptoms are *unsupported* by her medical records.").

Similarly, it was improper under *Bruce* for the ALJ to reject Ms. Stone's testimony that she has witnessed her mother scream in pain on the grounds that it was not supported by the medical evidence in the record.  AR at 26.  The ALJ's assertion that Ms. Stone "has not observed the claimant with any supposed seizures" is also an inaccurate characterization of Ms. Stone's testimony.  When Ms. Stone was asked whether she ever witnessed her mom having any kind of "spell or a blackout, and not be able to talk to you or respond to you," Ms. Stone responded, "Probably a lot.  Last time she had something of a blackout, she was getting up and walking, she had to hold herself against the wall . . . She couldn't talk for a couple of seconds

1   . . . and she said I've got dizzy . . . her eyes will get wide, and she'll just kind of stop and . . .

2   she can't move, obviously."  AR at 733.

3          The ALJ also discounted the testimony of Mr. Cameron and Ms. Stone based on the

4   fact that "[a]s they all share a household, they would all benefit if the claimant were awarded

5   benefits."  AR at 26.  However, "[i]f the desire or expectation of obtaining benefits were by

6   itself sufficient to discredit a claimant's testimony, then no claimant (or their spouse, or

7   friends, or family) would ever be found credible."  *Ratto v. Secretary, Dept. of Health and*

8   *Human Servs.*, 839 F. Supp. 1415, 1429 (D. Or. 1993).  Indeed, under the logic employed by

9   the ALJ in this case, few third-party witnesses could provide probative testimony.  *See Dodrill*,

10  12 F.3d at 919 (providing that testimony from lay witnesses who see the claimant every day is

11  of particular value because "[a]n eye witness can often tell whether someone is suffering or

12  merely malingering . . . this is particularly true of witnesses who view the claimant on a daily

13  basis.").

14         Finally, the ALJ's observed that "[t]he claimant's drinking was largely ignored in the

15  testimony despite the evidence that she drinks as much as a six pack of beer a day."  AR at 26.

16  Without more, however, this is an insufficient reason to discount the testimony of Mr.

17  Cameron and Ms. Stone.  The ALJ did not ask Mr. Cameron about plaintiff's alcohol

18  consumption, and therefore his testimony did not conflict with any evidence in the record

19  regarding plaintiff's drug or alcohol use.  When the ALJ asked Ms. Stone whether plaintiff had

20  been drinking when she experienced a "spell or a blackout," Ms. Stone did not deny that

21  plaintiff routinely drank alcohol, but stated, "No, not usually.  Usually it's about the middle of

22  the day."  AR at 734.

23         Thus, the ALJ failed provide sufficient reasons to discredit the testimony of Mr.

24  Cameron or Ms. Stone.  On remand, the ALJ is directed to reconsider his findings with respect

25  to these lay witnesses, who have daily contact with the plaintiff and are in a position to convey

26  a complete picture of her ability to function.

G.      The ALJ May Have Erred By Failing To Elicit Vocational Expert Testimony

Plaintiff contends that the ALJ erred by relying upon the Medical-Vocational

Guidelines ("the Guidelines"), although plaintiff's mental impairments of anxiety and

depressive disorders also impose nonexertional limitations. Dkt. 13 at 23. In addition, plaintiff

asserts that her migraine headaches, HIV infection, and medication side-effects also imposed

nonexertional limitations on plaintiff's ability to complete a work-day or workweek without an

unreasonable number or length of breaks. *Id*. at 23-24. Plaintiff asserts that the ALJ should

have instead solicited testimony from a Vocational Expert ("VE") at the hearing. *Id*. at 22-25.

The ALJ may rely on the Guidelines "only when the grids accurately and completely

describe the claimant's abilities and limitations." *Tackett v. Apfel*, 180 F.3d 1094, 1102 (9th

Cir. 1999) (internal quotation marks and citations omitted). That is, when nonexertional

impairments limit a claimant's functional capacity in ways not contemplated by the Guidelines,

the Guidelines are inapplicable. *Id.* However, the Guidelines are inapplicable only if a

claimant's nonexertional limitations are "sufficiently severe" so as to significantly limit the

range of work permitted by the claimant's exertional limitations. *See Hoopai v. Astrue*, 499

F.3d 1071, 1075 (9th Cir. 2007). In other words, if the claimant's nonexertional limitations do

not significantly erode the pertinent occupational base, the ALJ may rely upon the Guidelines

as a framework. *See* SSR 83-12, 1983 WL 31253; SSR 83-14, 1983 WL 31254, at *3 ("A

particular . . . nonexertional limitation may have very little effect on the range of work

remaining that an individual can perform. The person, therefore, comes very close to meeting

a table rule which directs a conclusion of "Not disabled.").

Here, because the ALJ did not properly consider all of the medical evidence, it follows

that the ALJ may have erred by relying upon the Guidelines. Accordingly, on remand, the ALJ

shall reevaluate whether to obtain VE testimony after reevaluating the pertinent medical

evidence and, if applicable, revising plaintiff's RFC. The ALJ shall then determine whether

plaintiff's nonexertional limitations are "sufficiently severe" so as to significantly limit the

REPORT AND RECOMMENDATION - 24

range of work permitted by plaintiff's exertional limitations.  If so, the ALJ shall solicit testimony from a VE at a new hearing.

VIII.   CONCLUSION

For the foregoing reasons, the Court recommends that this case be REVERSED and REMANDED to the Commissioner for further proceedings not inconsistent with the Court's instructions.  A proposed order accompanies this Report and Recommendation.

DATED this 26th day of November, 2010.

James P. Donohue
_____
JAMES P. DONOHUE
United States Magistrate Judge

REPORT AND RECOMMENDATION - 25